UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOSEPH JOHNSON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 13-cv-13301-ADB |
| | * | |
| ROBERT CHARBONNIER, ROBERT ENGLAND, | * | |
| | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM AND ORDER

December 8, 2015

BURROUGHS, D.J.

On January 14, 2013, while standing outside of Bell's Market in South Boston, Plaintiff Joseph Johnson was arrested by officers of the Boston Police Department. Johnson had several outstanding warrants at the time. In the course of the arrest, Johnson and Boston Police Officer Robert Charbonnier had a physical altercation, and Johnson was subsequently charged with Assault and Battery on a Police Officer. That charge, however, was eventually dropped and soon thereafter, Johnson initiated this civil action. In his complaint, Johnson asserts various federal and state-law claims against two of the arresting officers: Robert Charbonnier and Robert England (together, the "Defendants"). Johnson alleges that Charbonnier used excessive force during the arrest, in violation of his Constitutional rights, and that both Defendants then falsely and maliciously prosecuted him for Assault and Battery on a Police Officer. Before the Court are Defendants' Motions for Summary Judgment. For the reasons set forth herein, England's Motion for Summary Judgment is ALLOWED and all counts against England are dismissed; Charbonnier's Motion for Summary Judgment is ALLOWED IN PART and DENIED IN PART.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural History

Johnson filed his original Complaint on December 31, 2013, naming the City of Boston ("Boston"), Charbonnier, England, and Sergeant Clark, whose first name was unknown, as defendants. [ECF No. 1]. In April 2014, both Boston and Clark moved to dismiss the Complaint, [ECF Nos. 11, 13], and Johnson responded by filing an Amended Complaint that named only Charbonnier and England as defendants [ECF No. 24 ("Amended Complaint.")]. The Amended Complaint includes five causes of action, all but one of which are brought against both Defendants: Count I asserts a 42 U.S.C. § 1983 ("§ 1983") claim against only Charbonnier, on the grounds that he used excessive force during Johnson's arrest in violation of the 4th Amendment; Count II alleges a § 1983 claim against the Defendants for conspiring to violate Johnson's constitutional rights; Count IV alleges the Defendants violated Johnson's state rights under the Massachusetts Civil Rights Act, Mass. Gen. L. ch. 12, § 11I; Count V asserts a state-law malicious prosecution claim against the Defendants; and Count VII asserts a state-law intentional infliction of emotional distress claim against the Defendants.[1]

On September 15, 2015, Charbonnier and England separately moved for summary judgment. [ECF Nos. 68, 71]. Both moved for summary judgment on Counts II (conspiracy), IV (Mass. Civil Rights Act); V (malicious prosecution), and VII (intentional infliction of emotional distress).[2] Defendants' motions were accompanied by separate Memoranda of Law, [ECF Nos. 69, 72], and identical Statements of Material Facts [ECF No. 70, 73]. On September 29, 2015, Johnson filed a Memorandum of Law in opposition to the motions, [ECF No. 76], and a Counter

---

[1] The Amended Complaint dropped Count III, a § 1983 claim against Boston, and Count VI, a vicarious liability claim against Boston, but did not renumber the remaining Counts.
[2] Charbonnier did not move for summary judgment on Count I (excessive force).

Statement of Material Facts [ECF No. 77]. On November 30, 2015, the Court held oral argument on the motions.

### B. Factual Background

The following facts are undisputed, unless otherwise noted. Additional relevant facts will be discussed as needed in this Memorandum.

On January 14, 2013, at approximately 4:00 pm, Johnson was standing outside of Bell's Market in South Boston. [ECF No. 73, Defendant Robert Charbonnier's Local Rule 56.1 Statement of Facts and Supporting Documentation ("Def Facts"), ¶ 1].[3] Johnson was standing with an individual known as "Mucka" (a.k.a. Thomas McClaney). Id. ¶ 11. Johnson had outstanding warrants, and had been arrested numerous times in the past, including for aggravated assault and battery and resisting police officers. Id. ¶¶ 3, 6.

On the day of the arrest, officers Charbonnier, England, and Kenneth Reid were working in the South Boston drug control unit of the Boston Police Department. Id. ¶ 2. While on patrol, England observed Johnson standing outside of Bell's Market and notified Reid and Charbonnier. Id. ¶¶ 9-10. The three officers believed that Johnson might try to flee, based on his past criminal history, and they discussed how to best approach Johnson to arrest him for the outstanding warrants. Id. ¶ 13. The officers devised an arrest plan: Charbonnier would walk past Johnson and position himself on one side; Reid and England would follow behind and approach Johnson from the other side, such that the officers would be on either side of Johnson in case he attempted to flee. Id. ¶ 14.

---

[3] Because the Defendants filed identical Statements of Material Facts pursuant to Local Rule 56.1, [ECF Nos. 70, 73], and for ease of citation, this Memorandum will only cite to the statement filed by Charbonnier.

Consistent with this plan, Charbonnier approached Johnson while pretending to be on his cellphone. Id. ¶ 15. Instead of walking past Johnson, however, as per the plan, Charbonnier stopped and ultimately initiated the arrest on his own. The parties disagree over the sequence of events that preceded the arrest.

Charbonnier testified at his deposition that as he approached Johnson, Mucka said something to Johnson, and Johnson then looked back and forth at Charbonnier. Charbonnier, believing that Johnson recognized him as a police officer, put away his cell phone, pulled out his badge and said "Boston Police." [ECF No. 73-3, Deposition of Robert Charbonnier, at 25:1-5; 26:3-9]. Johnson disputes that Mucka said anything to him before the arrest, that he knew that the man approaching him was a police officer, and that Charbonnier pulled out his badge and identified himself as a police officer before initiating the arrest. [ECF No. 77, Plaintiff's Responsive Pleading Per L.R. 56.1 ("Plaintiff Facts"), ¶¶ 16-18].

Johnson testified that while standing outside of Bell's Market, responding to a text, he glanced up and saw a man that looked like a cop; he does not remember anything after that, until he woke up at Boston Medical Center. [ECF No. 73-4, Deposition of Joseph Johnson, at 146:2-18]. In support of his opposition to the motions for summary judgment, however, Johnson also submitted a surveillance video from outside of Bell's Market that captured the arrest. Plaintiff Facts, Ex. K. The video shows Johnson using his phone and standing with Mucka as Charbonnier approaches. In the video, which has no sound, Johnson glances up at Charbonnier, who is walking towards him in plain clothes while pretending to be on his cell phone. In response, Charbonnier puts away the cell phone and reaches towards Johnson. It is not clear from the video whether Charbonnier shows his police badge or states that he is Boston Police before reaching towards Johnson. The video then shows that in the span of one-to-two seconds, Charbonnier

4

grabs Johnson by the neck and the two fall to the ground. The parties dispute what happened during this time, and the video itself is not conclusive one way or the other. Defendants contend that as Charbonnier reached to grab Plaintiff's shoulder to place him under arrest, Johnson pivoted and pushed Charbonnier away with his arm, with the resulting momentum causing Johnson and Charbonnier to fall to the ground. Def. Facts, ¶ 19. Johnson denies pivoting away from or pushing Charbonnier. Plaintiff Facts, ¶ 19. According to Johnson, "the video reveals that officer Charbonnier grabbed [him] around the neck, tripped him, and slammed him to the ground." Id. Johnson also asserts that after he and Charbonnier were on the ground, Charbonnier struck him in the face with a closed fist. Id. ¶ 35. The video, however, is also not conclusive on this point.

What happened next is largely undisputed. England and non-defendant Kenneth Reid arrived on the scene shortly after Charbonnier and Johnson fell to the ground. Def. Facts, ¶ 22. Charbonnier and Johnson were transported to Boston Medical Center for treatment. Id. ¶ 23. During the fall, Charbonnier hit his head on a brick wall and sustained a laceration to his head and arm. Id. ¶ 20. Charbonnier was briefly hospitalized and received fifteen staples to his head. Id. ¶ 24. After the arrest, Johnson complained of headaches, lower back pain and leg pain. He was examined and given a CT Scan and X-Rays, which revealed no abnormalities nor any visible injuries, and he was subsequently discharged. Id. ¶ 25.

England then wrote a police report using information provided by Charbonnier, and also filed an application for a criminal complaint. Id. ¶¶ 26-28; Plaintiff Facts, Exh. L. The police report described the incident as an assault and battery on a police officer, and stated that, "[w]hen PO Charbonnier identified himself as the Boston Police, Johnson pushed Officer Charbonnier and tried to flee. PO Charbonnier grabbed Johnson and both PO Charbonnier and Johnson fell to

5

the ground." Plaintiff Facts, Exh. L. A complaint for Assault and Battery on a Police Officer was issued on January 15, 2013. Def. Facts, ¶ 29; Exh. G. On April 22, 2013, the Suffolk County District Attorney's Office entered a *nolle prosequi* on the Assault and Battery charge "in the interests of justice." Id ¶ 32; Exh. I.

Johnson alleges that as a result of the incident, he suffered severe physical injuries for which he was treated at a hospital, as well as emotional distress. Amended Complaint, ¶¶ 16-17.

## II. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate where the movant can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if its resolution might affect the outcome of the case under the controlling law." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted). "A genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Id. (citation omitted).

"To succeed in showing that there is no genuine dispute of material fact," the moving party must point to "specific evidence in the record that would be admissible at trial." Ocasio-Hernandez v. Fortuño-Burset, 777 F.3d 1, 4-5 (1st Cir. 2015). "That is, it must 'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Id. (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Once the movant takes the position that the record fails to make out any

6

trialworthy question of material fact, "it is the burden of the nonmoving party to proffer facts sufficient to rebut the movant's assertions." Nansamba v. North Shore Med. Ctr., Inc., 727 F.3d 33, 40 (1st Cir. 2013) (citation omitted).

In reviewing the record, however, the court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Cochran, 328 F.3d at 6 (citation omitted). The First Circuit has noted that this standard "is favorable to the nonmoving party, but it does not give him a free pass to trial." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). "The factual conflicts upon which he relies must be both genuine and material," Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 396-97 (1st Cir. 2012), and the court may discount "conclusory allegations, improbable inferences, and unsupported speculation." Cochran, 328 F.3d at 6 (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Medina-Munoz, 896 F.2d at 8.

### B. Analysis

#### 1. Count II: Section 1983 Conspiracy Claim

Count II of the Amended Complaint asserts a conspiracy claim under 42 U.S.C. § 1983, on the ground that the Defendants "conspired to deprive Mr. Johnson of the equal protection of the law or of the equal privileges and immunities under the law." Amended Complaint, ¶ 27. "A civil rights conspiracy is commonly defined as a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." Earle v. Benoit, 850 F.2d 836, 844 (1st Cir.

1988) (internal quotations and citation omitted). For such a conspiracy to be actionable under § 1983, a plaintiff must prove that there has been, in addition to the conspiratorial agreement, "an actual deprivation of a right secured by the Constitution and laws." Santiago v. Fenton, 891 F.2d 373, 389 (1st Cir. 1989) (quoting Earle, 850 F.2d at 844).

Defendants argue that there is no evidence, either direct or circumstantial, to support the assertion that there was an agreement between Charbonnier and England to violate Johnson's constitutional rights. Defendants contend that because the evidence of what actually happened during the arrest was so different from what Charbonnier and England had previously planned, there is no basis for finding a conspiratorial agreement to violate Johnson's constitutional rights. Plaintiff counters that the conspiracy claim is based on the "totality of the circumstances" and that there is a "clear inference that the officers entered into an implied agreement" to violate Johnson's constitutional rights. [ECF No. 76, at 8].

"To prevail on a claim of conspiracy, plaintiff need not prove an express agreement, but merely that there is sufficient circumstantial evidence of an agreement to conspire." Wickers v. Gouin, No. CIV.A. 07-12235-MBB, 2011 WL 832500, at *8 (D. Mass. Mar. 3, 2011). That being said, "although conspiracy claims often rest on inferences, 'summary judgment may still be appropriate on a conspiracy claim where the nonmoving party rests merely on conclusory allegations' to support his theory.'" Spencer v. City of Boston, No. CV 13-11528-MBB, 2015 WL 6870044, at *10 (D. Mass. Nov. 6, 2015) (quoting Estate of Bennett v. Wainwright, 548 F.3d at 178); see also Turkowitz v. Town of Provincetown, 914 F. Supp. 2d 62, 74 (D. Mass. 2012) ("While a conspiracy may be established by implication through circumstantial evidence, summary judgment is warranted where the non-moving party relies solely on conclusory allegations and presents 'no evidence, either direct or circumstantial of an agreement among

defendants from which a reasonable jury could [infer the existence of] a conspiracy among them.'") (quoting Estate of Bennett, 548 F.3d at 178).

The only constitutional violation alleged in any detail by Johnson in the Complaint is the use of excessive and unreasonable force. Amended Complaint, ¶ 23. Accordingly, the Court interprets the § 1983 conspiracy claim as alleging a conspiracy between the Defendants to use excessive force in violation of Johnson's 4th Amendment rights. The only evidence Plaintiff offers in support of this conspiracy is the fact that the Defendants "gathered together" to devise a plan before arresting Mr. Johnson and "[r]eview of the video reveals that their 'plan' was to have a little fun, roughing up a person they believed would not be in a position to fight back because of his record." [ECF No. 76, at 8].

A review of the record establishes that, to the extent there was a plan, Charbonnier deviated from it, by failing to walk past Johnson and then wait for the other two officers to approach. There is no evidence supporting plaintiff's conclusory assertion that the Defendants agreed Charbonnier would use excessive force and thereby violate Johnson's rights. The video shows Charbonnier acting alone. England does not appear in the video until after Charbonnier and Johnson are on the ground. There is no claim, nor does the video show, that England applied any force to Johnson. Though the testimony and the undisputed facts reveal that Charbonnier and England did indeed have an agreement to arrest Johnson, there is no support in the record that the two agreed to use excessive force while doing so. Thus, because there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," both Defendants are entitled to summary judgment on the § 1983 conspiracy count.[4] See Spencer, 2015 WL

---

[4] To the extent Plaintiff tries to expand the § 1983 conspiracy claim to encompass an agreement between England and Charbonnier to maliciously prosecute Johnson, it is unavailing. As an initial matter, nowhere in the Complaint does Johnson contend that the prosecution was

6870044, at *10 (granting defendant police officers summary judgment on § 1983 conspiracy claim, but not § 1983 excessive force claim, because "[p]laintiff has presented no evidence, either direct or circumstantial, of an agreement among defendant officers from which a reasonable jury could infer a conspiracy among them to inflict harm upon plaintiff.").

### 2. Count IV: Massachusetts Civil Rights Act

Count IV alleges that the Defendants interfered with and deprived Johnson of the exercise and enjoyment of his civil rights, in violation of the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. L. Ch. 12, § 11I. Amended Complaint, ¶ 29. The MCRA was enacted "to provide a State remedy for deprivations of civil rights." Batchelder v. Allied Stores Corp., 393 Mass. 819, 822 (1985). It provides a private right of action against "any person or persons [who] interfere by threats, intimidation or coercion . . . with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth." Mass. Gen. L. Ch. 12, § 11H and 11I. The Massachusetts Supreme Judicial Court has noted that although the remedy provided by the MCRA is largely "coextensive" with that available under § 1983, id., the MCRA's application is far more limited. "To state a claim under the MCRA, a plaintiff must show that (1) his exercise or enjoyment of rights secured by the constitution or laws of either the United States or the Commonwealth of Massachusetts (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats,

---

unconstitutional; instead, the Complaint only frames the prosecution as a state common law violation. See Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001) (finding that when bringing a § 1983 conspiracy claim, "it is the plaintiff's burden to identify the specific constitutional right infringed."). Moreover, as further discussed below, there is no evidence of an agreement between England and Charbonnier to maliciously prosecute Johnson.

intimidation or coercion." Farrah ex rel. Estate of Santana v. Gondella, 725 F. Supp. 2d 238, 247 (D. Mass. 2010) (citing Swanset Dev. Corp. v. City of Taunton, 432 Mass. 390, 395 (1996)).

Merely proving the deprivation of a constitutional right will not suffice to establish liability under the MCRA. See Bally v. Northeastern Univ., 403 Mass. 713, 718 (1989). Rather, the Act applies only to situations "where the derogation of secured rights occurs by threats, intimidation or coercion." Id. Courts have held that the added requirement of threats, intimidation or coercion was "specifically intended to limit liability under the Act." Freeman v. Planning Bd. of W. Boylston, 419 Mass. 548, 565-66 (1995); see also Bally, 403 Mass. at 718 (noting that the Massachusetts Legislature "did not intend to create a vast constitutional tort" in enacting the MCRA) (quoting Bell v. Mazza, 394 Mass. 176, 182-83 (1985)). Thus, a "direct violation" of a person's constitutional rights, without threats, coercion, or intimidation, "does not implicate the Act." Longval v. Commissioner of Correction, 404 Mass. 325, 333 (1989).

Defendants argue that they are entitled to summary judgment on Count IV because the record contains no evidence suggesting that Defendants attempted to coerce, threaten, or intimidate Plaintiff into relinquishing any protected right. The majority of courts have held that in cases involving wrongful arrests or excessive force, the fact of a Fourth Amendment violation, standing alone, does not give rise to a claim under the MCRA. See Bettencourt v. Arruda, No. CIV.A. 10-11487-JGD, 2012 WL 5398475, at *13 (D. Mass. Nov. 1, 2012) (allowing summary judgment for defendant officer, and holding that officer's conduct in grabbing and pepper-spraying the plaintiff, even if it amounted an illegal seizure or excessive force, was insufficient to establish liability under the MCRA); Santiago v. Keyes, 890 F. Supp. 2d 149, 156 (D. Mass. 2012) (dismissing MCRA claims against police officers who arrested plaintiff at a traffic stop, holding that plaintiff could not "rely on the arrest as both the constitutional violation and the

evidence of threats, intimidation, or coercion").[5] To hold otherwise would "graft one act onto two distinct burdens," Santiago, 890 F. Supp. 2d at 156, which would be at odds with legislative intent and render some of the language of the MCRA superfluous. See also Goddard v. Kelley, 629 F. Supp. 2d 115, 129 (D. Mass. 2009) (concluding that it would be nonsensical to find that police officers "assaulted the plaintiff in order to cause the plaintiff to give up his right to be free from excessive force").

Neither the allegations in the Complaint nor the evidence that has come to light during discovery support a finding that either Defendant interfered or attempted to interfere with Plaintiff's rights through threats, intimidation or coercion. Accordingly, Johnson's MCRA claim fails as a matter of law, and both Defendants are entitled to summary judgment. Johnson cannot rely on the alleged use of excessive force, which is already being challenged under Count I via § 1983, as both evidence of the constitutional violation and of the threats, intimidation, and coercion required under the MCRA.

### 3. Count V: Malicious Prosecution

Plaintiff also brings a malicious prosecution claim against both Defendants. He claims that the Defendants improperly instituted criminal proceedings against him for Assault and Battery on a Police Officer. "Under Massachusetts law, there are three elements of a malicious prosecution claim. A plaintiff must establish that he was damaged because (1) the defendant commenced an original action without probable cause, (2) with malice, and (3) that the original action terminated in his favor." Yacubian v. United States, 750 F.3d 100, 108-09 (1st Cir. 2014) (citing Chervin v. Travelers Ins. Co., 448 Mass. 95 (2006)).

---

[5] But see Nuon v. City of Lowell, 768 F. Supp. 2d 323, 335 n.8 (D. Mass. 2011) (holding that arrest without probable cause establishes the "coercion" element for purposes of the MCRA).

Defendants contend that because the underlying criminal action did not terminate in Johnson's favor, they are entitled to summary judgment on Count V as a matter of law. As explained by the Massachusetts Supreme Judicial Court ("SJC"), a criminal prosecution terminates "in favor of the plaintiff when the district attorney formally abandons the criminal proceedings by a *nolle prosequi* or a motion to dismiss" so long as "the reasons stated for the *nolle prosequi* or dismissal [are] consistent with the innocence of the accused." Wynne v. Rosen, 391 Mass. 797, 800-801 (1984). A prosecution terminates in plaintiff's favor if "[t]he circumstances of the abandonment must compel an inference that there existed a lack of reasonable grounds to pursue the prosecution." Id. at 801.

The SJC and First Circuit have not addressed whether a *nolle prosequi* entered in the interests of justice can support a malicious prosecution claim. Judge Zobel, in dismissing a malicious prosecution claim where the reason for the *nolle prosequi* was, as is the case here, "the interests of justice," Basu v. Brogan, No. CIV.A. 00-11278, 2002 WL 745838 (D. Mass Feb. 8, 2002), aff'd, 47 App'x 586 (1st Cir. 2002), held that the reason stated for the *nolle prosequi* was "too ambiguous to *compel* an inference that there existed a lack of reasonable grounds to pursue prosecution," and that therefore dismissal was required. Id. at *3. Outside the First Circuit, the Second and Ninth Circuits have both considered the issue but reached conflicting conclusions. Compare Nhia Kao Vang v. Decker, 607 F. App'x 728, 730 (9th Cir. 2015) ("Defendants cannot simply hide behind the phrase 'in the interests of justice' to prevent Plaintiffs from pursuing their malicious prosecution claims."), with Hygh v. Jacons, 961 F.2d 359, 368 (2d Cir. 1992) ("A dismissal 'in the interest' of justice . . . leaves the question of guilt or innocence unanswered . . . Consequently, as a matter of law, it cannot provide the favorable termination required as the basis for a claim of malicious prosecution.").

Under the SJC's decision in Wynne, a court can look beyond the text of a *nolle prosequi* to determine whether an action terminated in plaintiff's favor. Wynne holds that a malicious prosecution claim may proceed if the "circumstances of the abandonment" infer that there existed a lack of reasonable grounds to pursue the prosecution. 391 Mass. at 801. In certain circumstances, therefore, a *nolle prosequi* can constitute a termination in plaintiff's favor. In this case, however, there simply isn't enough information for the Court to make that determination as a matter of law.

Nonetheless, the Court grants England's motion for summary judgment on the malicious prosecution count because there is no evidence on the record that England acted with the requisite malice. To establish the malice element of a malicious prosecution claim, a plaintiff must show that the defendant acted with an improper purpose. Shea v. Porter, No. CIV.A. 08-12148-FDS, 2013 WL 1339671, at *5 (D. Mass. Mar. 29, 2013). "To prove an improper purpose, the plaintiff must show that the defendant 'acted primarily for a purpose other than that of properly carrying out his duties, or was attempting to achieve an unlawful end or a lawful end through unlawful means, or intended to harass, vex, or annoy the plaintiff.'" Id. at 6 (quoting Williams v. City of Boston, 771 F. Supp. 2d 190, 206 (D. Mass.2011)). Plaintiff has offered no evidence that England acted with such an improper purpose. Both parties admit that England wrote the police report based on information provided by Charbonnier. Def Facts, ¶¶ 26-27; Plaintiff Facts, ¶¶ 26-27. England testified that he did not actually see the incident and relied on Charbonnier's account to write the report. [ECF No. 73-2, Robert England Deposition, at 31:14-17; 49:19-23; 50:8-15]. Plaintiff, however, has not presented any evidence showing or suggesting that England knew the information provided by Charbonnier was false. Accordingly, as there is no evidence that England acted for a purpose other than carrying out his duties,

summary judgment is appropriate. See, e.g., Beecy v. Pucciarelli, 387 Mass. 589, 594 (1982) ("If the defendant, in making the complaint, acted in good faith and with the honest purpose of bringing an offender to justice, the prosecution, even if it can be held to be without probable cause, was not malicious.").

The Court, however, declines to grant Charbonnier's motion for summary judgment. "Someone who, in bad faith, provides information to a police officer that results in that officer submitting a complaint against another" may be liable for malicious prosecution. Fontanez v. City of Worcester, No. CIV.A. 09-40203-FDS, 2012 WL 2829613, at *10 (D. Mass. July 9, 2012) (citing Limone v. United States, 497 F. Supp. 2d 143, 206 (D. Mass. 2007)). Given the disputed facts regarding what took place during Johnson's arrest, there is a material dispute as to whether Charbonnier acted in bad faith, and therefore with malice, when he recounted Johnson's arrest to England. Moreover, the facts surrounding the arrest, including Charbonnier's alleged use of excessive force, could further support a finding of malice. See, e.g., Goddard, 629 F. Supp. 2d at 132 ("An improper motive for the prosecution may be inferred from the evidence that Kelley otherwise acted with malice towards plaintiff—for example, by punching him in the neck without reason or provocation.").

### 4. Count VII: Intentional Infliction of Emotional Distress

Count VII of the Amended Complaint alleges that Johnson suffered extreme emotional distress as a result of Defendants' conduct during his arrest. To establish a claim for intentional infliction of emotional distress ("IIED") under Massachusetts law, Plaintiffs must show:

> (1) that the defendant intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that

> the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it.

Limone, 579 F.3d at 94 (quoting Agis v. Howard Johnson Co., 371 Mass. 140, 144 (1976)). "Extreme and outrageous conduct is behavior that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 240 (1st Cir. 2013).

Defendants argue that their conduct was not so extreme and outrageous to be beyond all possible bounds of decency. England claims the undisputed facts establish that he did not touch Johnson at all and Charbonnier argues that the video evidence shows that he displayed his badge to the Plaintiff and that the Plaintiff assaulted him before the two fell to the ground. Moreover, both Defendants, who were arresting the Plaintiff on several outstanding warrants, contend that they were "merely carrying out their obligations as law enforcement officers," and therefore, "their conduct as a matter of law is not deemed extreme and outrageous." Sietins v. Joseph, 238 F. Supp. 2d 366, 379 (D. Mass. 2003).

After reviewing the record, the Court grants summary judgment in favor of England on the IIED claim, but denies the motion as to Charbonnier. There are disputed issues of material facts which preclude a finding that defendant Charbonnier is entitled to summary judgment as a matter of law. If a jury were to credit Plaintiff's version of events, under which Charbonnier applied violent force to a compliant, non-threatening individual, there may be sufficient evidence to support a finding that Charbonnier's behavior was "extreme and outrageous." See Eason v. Alexis, 824 F. Supp. 2d 236, 243-44 (D. Mass. 2011) (denying motion for summary judgment as to IIED claim against arresting police officers, where plaintiff alleged that the officers "tackled him without cause, threw him over the porch railing, breaking his ankle severely, pointed a

loaded gun at him and filed a criminal complaint against him to cover it all up"); see also Poy v. Boutselis, 352 F.3d 479, 485 (1st Cir. 2003) (where plaintiff and others testified that police officer hit him from behind while he was peacefully exiting a building, and then pushed him to the ground and handcuffed him without probable cause, there was sufficient evidence to support jury's finding of intentional infliction of emotional distress); Barbosa v. Conlon, 962 F. Supp. 2d 316, 334 (D. Mass. 2013) (denying motion for summary judgment where "the conduct the plaintiffs complain of, including the use of excessive force, abusive language, and deliberate indifference to obvious medical needs would, if accepted by the jury, go beyond the bounds of acceptable conduct."). The Court is mindful that Johnson had a lengthy criminal history and posed a flight risk, and that Charbonnier was aware of this when he apprehended Johnson. However, given the disputed evidence about what actually took place during the arrest, there remain genuine and material factual disputes regarding whether Charbonnier's conduct went beyond the bounds of acceptable conduct. Accordingly, Charbonnier is not entitled to judgment as a matter of law, and his motion for summary judgment as to the IIED claim is denied.

Plaintiff has not, however, adduced facts that, even if accepted by the jury, demonstrate that England acted beyond the bounds of acceptable conduct. England did not use any force against Johnson and, by preparing a police report based on information provided by Charbonnier, England was merely acting within his duties as a police officer. Construing all the evidence in Johnson's favor, no jury could find that England's conduct was so extreme as to go beyond all possible bounds of decency. As a result, England is entitled to judgment as a matter of law and his motion for summary judgment as to the IIED claim is granted.

### III.  CONCLUSION

For the foregoing reasons, the Court rules as follows on Defendants' Motions for Summary Judgment:

   1. Defendant Robert England's Motion is <u>ALLOWED</u> in full with respect to all claims asserted against him.

   2. Defendant Robert Charbonnier's Motion is <u>ALLOWED</u> with respect to Counts II and IV of the Amended Complaint but <u>DENIED</u> with respect to Counts V and VII of the Amended Complaint.

   The parties are directed to appear for a status conference on January 7, 2016 at 10:30 am.

**SO ORDERED.**

Dated:  December 8, 2015

<u>/s/ Allison D. Burroughs</u>
ALLISON D. BURROUGHS
DISTRICT JUDGE
